OPINION OF THE COURT
Orazio R. Bellantoni, J.
On or about April 23, 1992 adoption petitions were filed by *895 Michael and Barbara B., seeking to finalize the adoptions of Michael S. (date of birth Apr. 5, 1988) and Samantha S. (date of birth Apr. 30, 1986). The subject children were born in wedlock to John S. and Antoinette S.
The natural father, John S., is presently incarcerated in the State prison and is serving a 5 to 11-year sentence for the attempted murder of his wife, Antoinette S. This court is in receipt of two extrajudicial consents duly executed by John S. dated March 24, 1992 consenting to the adoption of his children by the B’s. Mr. S. was represented by counsel for the execution of said instruments. This court finds that the parental rights of John S. are terminated based upon the extrajudicial consents being in complete compliance with Domestic Relations Law § 115-b (3) and (4).
The natural mother, Antoinette S., is presently residing at Gold Water Memorial Hospital. Since the attempted murder in November 1990, in which she sustained severe head trauma, Mrs. S. has been in a coma and has been kept alive with the aid of artificial respiration. At this juncture, it is this court’s understanding that she is in a permanent vegetative state. Two medical doctors have confirmed that the condition of Mrs. S. is permanent and the prognosis of recovery is unlikely. She is not expected to ever regain consciousness or lucidity.
Based upon the condition of Mrs. S., John Lasoski, her half-brother, had brought a proceeding pursuant to SCPA article 17-A to be appointed legal guardian. By order of C. Raymond Radigan, Judge of the Surrogate Court, Nassau County, dated April 10, 1993 Mr. Lasoski was appointed legal guardian and his spouse, Mrs. Jennie R. Lasoski, was designated as the standby guardian. Mr. Lasoski has submitted an affidavit to this court stating that he believes that the finalization of the proposed adoption is in the best interests of all subject parties.
The relationship between parent and child is constitutionally protected. (Matter of Daley, 123 Misc 2d 139, 140 [1984].) In Lassiter v Department of Social Servs. (452 US 18 [1981]), the Supreme Court established that for parental rights to be terminated, the termination must be accomplished by meeting the requirements of due process. To achieve this end, New York State has set up certain guidelines which must be followed in order to ensure that an adoption is effectuated in such a way as to not violate any party’s due process. In the instant matter, the mother of the subject children is not able *896 to surrender her parental rights and it is for this reason that this court must be very cautious as to how it proceeds.
Pursuant to Domestic Relations Law § 111 (2) (d) this court may dispense with the consent of a mother who by reason of mental illness or mental retardation is presently and for the foreseeable future unable to provide proper care for the child. However, said provision mandates the use of Social Services Law § 384-b (6) and proceedings brought pursuant to Social Services Law § 384-b encompass proceedings originated by an authorized agency or by an authorized foster parent. Because the instant matter is a private placement adoption the above-referenced sections of law are inapplicable in this matter and the court must look to other sections of law for the authority to dispense with the mother’s consent. This court finds that the intent of Domestic Relations Law § 111 (2) (d) coupled with SCPA article 17-A and other related sections of the Domestic Relations Law provide strong support that the finalization of the pending adoption is within this court’s authority.
As previously mentioned, a legal guardian has been appointed over the natural mother’s person and property. Due to the unique circumstances of this case, the legal guardian must be notified of this adoption. Domestic Relations Law enables this court in its discretion to notify any party or parties the court believes are necessary for the adoption. Furthermore, the legal guardian is able to execute the natural mother’s judicial consent on her behalf, if he still believes, as stated in his affidavit, that the proposed adoption is in the best interests of all parties including his sister.
Subdivision (5) of Domestic Relations Law § 115 states "[wjhere the petition alleges that either or both of the natural parents of the child have been deprived of civil rights or are mentally retarded, proof shall be submitted that such disability exists at the time of the proposed adoption.” In the case at bar, Judge C. Raymond Radigan, Surrogate, Nassau County, has already determined that the natural mother is mentally retarded and/or developmentally disabled as a result of the severe injuries that she sustained. The mother also comes under the category of "incapacitated” under article 81 of the Mental Hygiene Law (L 1992, ch 698, § 6, eff Apr. 1, 1993). Moreover, the medical affidavits are in this court’s file and confirm that the natural mother’s condition is permanent.
Based upon the foregoing this court finds that the natural mother’s judicial consent to the proposed adoption will be *897 completed by having the legal guardian execute said consent on her behalf in the courtroom. Therefore, Antoinette S.’s legal guardian, Mr. John Lasoski, is directed to appear in court before the undersigned on December 10, 1993 at 1:30 p.m. to execute said judicial consent provided he chooses to do so as her legal guardian.